20-952-cv
*Reply All Corp. v. Gimlet Media, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of February, two thousand twenty-one.

PRESENT:     JOHN M. WALKER, JR.,
             ROBERT D. SACK,
             RICHARD J. SULLIVAN,
                  *Circuit Judges.*

_____

REPLY ALL CORPORATION,

                  *Plaintiff-Appellant*,

          v.                                             No. 20-952-cv

GIMLET MEDIA, LLC,
f/k/a Gimlet Media, Inc.,

                  *Defendant-Appellee*.[*]

_____

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

| | |
|---|---|
| **For Plaintiff-Appellant:** | JOACHIM B. STEINBERG, Browne George Ross O'Brien Annaguey & Ellis LLP, San Francisco, CA. |
| **For Defendant-Appellee:** | JOHN L. STRAND (Bryan S. Conley, Amanda B. Slade, *on the brief*), Wolf, Greenfield & Sacks, PC, Boston, MA. |

Appeal from the United States District Court for the Eastern District of New York (William F. Kuntz, II, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Plaintiff-Appellant Reply All Corporation ("RAC") appeals from an order of the district court granting summary judgment in favor of Defendant-Appellee Gimlet Media, LLC, f/k/a Gimlet Media, Inc., on RAC's Lanham Act and common law trademark infringement claims.  On appeal, RAC contends that the district court erroneously applied each of the factors relevant to determining the likelihood of consumer confusion and erred in concluding that, as a matter of law, there was no such likelihood of confusion between RAC's and Gimlet's

trademarks.[1]   We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

## A.   RAC's Lanham Act Claims

We review a district court's grant of summary judgment *de novo*, "resolving all ambiguities and drawing all permissible inferences in favor of the nonmoving party." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 83 (2d Cir. 2020).  "In a trademark infringement case, we review *de novo* a ruling on whether the plaintiff has shown a likelihood of confusion because we consider the issue to be a question of law."  *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 326 (2d Cir. 2020).

Because the parties do not dispute the validity of RAC's mark, the only question before us is whether RAC has established a genuine issue of material fact

---

[1] After filing this appeal, RAC commenced an action before the U.S. Patent and Trademark Trial and Appeal Board ("TTAB") to cancel Gimlet's trademark registration.  (*See* Dkt. No. 112, Ex. B at 2.)  After Gimlet failed to file an answer to RAC's Petition for Cancellation, the TTAB entered default judgment in favor of RAC, cancelling Gimlet's trademark registration.  (*See id.*, Ex. A.)  Gimlet has since moved pursuant to Federal Rule of Civil Procedure 60 to vacate that default judgment on the grounds that neither Gimlet nor its counsel received notice of RAC's Petition for Cancellation.  (*See id.*, Ex. B.)  The current validity of *Gimlet's* mark does not in any way impact this case, which is premised on alleged infringing use of *RAC's* mark.  *Compare Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84–85 (2d Cir. 2020) (applying likelihood-of-confusion test to an alleged infringing use where the secondary user did not have a registered trademark), *with Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 35–37 (2d Cir. 2016) (applying same test where both parties had registered trademarks).  For simplicity, we therefore refer to "Gimlet's mark" in this summary order without regard to whether Gimlet is ultimately successful in reinstating its trademark registration.

3

as to whether Gimlet's mark is likely to cause consumer confusion. *See, e.g., Tiffany & Co.*, 971 F.3d at 84 & n.4. We evaluate this question by considering "the eight factors identified by Judge Friendly in *Polaroid v. Polarad Electronics*, 287 F.2d 492, 495 (2d Cir. 1961): (i) the strength of the senior user's mark[]; (ii) the similarity of the parties' marks; (iii) the market proximity of their products; (iv) the likelihood that the senior user will bridge any gap separating the parties' current markets; (v) the existence of actual consumer confusion; (vi) whether the junior user acted in bad faith in adopting its mark; (vii) the quality of the junior user's products; and (viii) the sophistication of the relevant consumer group." *Car-Freshner*, 980 F.3d at 327. Because RAC challenges the district court's conclusions as to all eight of these factors, we address each in turn.

### 1.    The Strength of RAC's Mark

We agree with the district court that RAC's mark "is suggestive but weak in the market for computer services." Sp. App'x at 8. RAC contends that its mark is arbitrary, rather than suggestive, and is therefore more "inherently distinctive." *See, e.g., Car-Freshner*, 980 F.3d at 329. But RAC *itself* argued before the district court that its mark "is suggestive in that the name suggests what ReplyAll may do

4

– respond to multiple individuals' questions and conversations."[2]  Dist. Ct. Dkt.

91-1 at 18.  We agree.  "ReplyAll" as applied to a tool that allows users to post their

conversations for others to read is suggestive in that it "suggests the features of

[RAC's] product, requiring the purchaser to use imagination, thought, and

perception to reach a conclusion as to the nature of the goods."  *Lane Cap. Mgmt.,*

*Inc. v. Lane Cap. Mgmt, Inc.*, 192 F.3d 337, 344 (2d Cir. 1999).

    We also agree with the district court that RAC's "lack of sales, marketing

expenditures, and general absence from the marketplace" all suggest that RAC's

mark has acquired little or no distinctiveness in the marketplace.  Sp. App'x at 8;

*see Car-Freshner*, 980 F.3d at 329.  While RAC argues that its mark has acquired

distinctiveness through "unsolicited media coverage," RAC Br. at 28–29, it points

to only *two* such articles – one published on "TechinAsia" and another on

"seriousstartups.com" – and RAC offers no evidence indicating that these articles

were in fact unsolicited.

---

[2] RAC argued before the district court that its mark could also be "considered fanciful," and that regardless of "[w]hether it is suggestive or arbitrary or fanciful, [its] [m]ark is strong."  Dist. Ct. Dkt. 91-1 at 18–19.  We agree with the district court that the mark is suggestive, but commercially weak.

Accordingly, because RAC's mark is merely suggestive, not arbitrary or fanciful, and because it has acquired little to no distinctiveness in the marketplace, we agree with the district court that the first *Polaroid* factor favors Gimlet.

### 2.     Similarity of the Marks

We also agree with the district court that the parties' marks are not so similar as to be likely to confuse consumers, primarily because of the context in which those marks are most likely to appear.  We recognize that the parties' marks are identical when spoken aloud, and we have previously observed that using two identical words in sequence to form a mark is "extremely unusual" and therefore weighs in favor of finding confusing similarity.  *See Car-Freshner Corp.*, 980 F.3d at 330.  But while both RAC's logo and Gimlet's pre-2016 logo utilized a double arrow symbol and blue text, we agree with Gimlet that these facts do not suggest confusing similarity, since RAC's logo references a ubiquitous email icon with which consumers are already likely to be familiar.  *Cf. Cosmetically Sealed Indus. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997) ("If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well[-]known descriptive phrase.").

Moreover, we have cautioned that when addressing trademark similarity, courts should consider not simply "the typewritten and aural similarity of the marks, but how they are presented in the marketplace." *Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 962 (2d Cir. 1996). Gimlet's mark will ordinarily be presented orally (by the hosts of the podcast *Reply All*) or along with the *Reply All* logo on podcasting platforms. By contrast, given the nature of RAC's publishing tool, RAC's mark will ordinarily appear either on RAC's own website or on third-party websites, potentially alongside other companies' marks. Thus, while the two marks undoubtedly share aural and typographic similarities, they are unlikely to appear in the marketplace in a similar manner. We therefore agree with the district court that this factor favors Gimlet.

### 3.      **Competitive Proximity**

The third *Polaroid* factor, competitive proximity of the parties' products, applies "to both the subject matter of the commerce in which the two parties engage and the geographic areas in which they operate." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 39 (2d Cir. 2016). RAC claims that the parties' "products are consumed as media in much the same way as one another," citing the fact that "Gimlet also publishes transcripts of its podcasts, which very closely

resemble ReplyAll's content style." RAC Br. at 36. But this argument mischaracterizes how most consumers engage with both parties' products.

The vast majority of Gimlet's consumers *listen* to their podcasts, including *Reply All*, and those consumers encounter the *Reply All* show wherever they get their podcasts – on Apple Podcasts, Spotify, or any other podcasting platform, many of which have separate mobile applications. By contrast, RAC's services are embedded within webpages – primarily third-party websites. An end consumer would therefore rarely, if ever, view the parties' respective marks in the same trade channels. RAC argues that distinguishing between a website and a stand-alone mobile application (through which a user can download or stream content) is "a distinction without a difference," since they are simply different portals onto the internet. RAC Br. at 37. But "in the Twenty-First Century, the [i]nternet has become the venue for the advertising and sale of all manner of goods and services," so the fact "[t]hat the goods or services of the parties are both found on the [i]nternet proves little, if anything, about the likelihood that consumers will confuse similar marks used on such goods or services." 4 Thomas J. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 24:53.50 (5th ed. 2020). We

8

therefore reject RAC's suggestion that the parties' marks are in close competitive proximity simply because they both appear on the internet.

Finally, while it is true that Gimlet publishes transcripts of *Reply All* on its website, that website prominently displays the "GIMLET" house mark, which minimizes the possibility that consumers reading those transcripts would confuse Gimlet's mark with RAC's. *See, e.g.*, *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993) ("[W]hen a similar mark is used in conjunction with a company name, the likelihood of confusion may be lessened."). Accordingly, we agree with the district court that the parties' marks are not in close enough competitive proximity to create a likelihood of confusion.

### 4.  Bridging the Gap

"'Bridging the gap' refers to the likelihood that the senior user will enter the junior user's market in the future, or that consumers will perceive the senior user as likely to do so." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 387 (2d Cir. 2005). RAC does not dispute the district court's conclusion that "[t]here is no indication [RAC] plans to move into [Gimlet's] field, the development or monetization of podcasts." Sp. App'x at 12. Rather, it argues that because the parties' products are in competitive proximity, "there is really no gap to bridge." *Star Indus.*, 412

9

F.3d at 387. Because we do not agree that RAC's and Gimlet's products are in competitive proximity, this factor also favors Gimlet.

**5.  Actual Consumer Confusion**

While evidence of actual confusion is not necessary to prove trademark infringement, *see Guthrie*, 826 F.3d at 45, for the fifth *Polaroid* factor to weigh in its favor, RAC must show instances of actual consumer confusion that "could inflict commercial injury [on RAC] in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation." *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 583 (2d Cir. 1991). While such instances of actual confusion can be shown either through survey evidence or anecdotal examples, "the absence of surveys is evidence that actual confusion cannot be shown." *Sports Auth.*, 89 F.3d at 964.

Here, RAC presents no survey evidence showing actual confusion; rather, it relies only on a handful of instances of alleged consumer confusion. We agree with the district court that the majority of these anecdotes are not cognizable instances of actual consumer confusion under the fifth *Polaroid* factor. For example, several of RAC's alleged instances of confusion simply involve (1) users accidentally "tagging" Gimlet's podcast on social media, while intending to tag RAC, or (2) *Reply All* listeners mistakenly contacting RAC, while intending to

10

reach Gimlet. The district court properly concluded that these instances of general mistake or inadvertence – without more – do not suggest that those potential consumers in any way confused RAC's and Gimlet's products, let alone that there was confusion that could lead to "a diversion of sales, damage to goodwill, or loss of control over reputation." *See Lang*, 949 F.2d at 583 (declining to consider misdirected phone calls as evidence of actual confusion where the plaintiff had "not shown that these misdirected callers were prospective purchasers" of her products).

Relatedly, RAC cites several other instances in which individuals simply inquired about RAC's connection to Gimlet and its podcast. As we have previously explained, such "[i]nquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001). "Indeed, such inquiries are arguably premised upon a *lack* of confusion between the products such as to inspire the inquiry itself." *Id.* (emphasis in original).

Without these two categories of alleged consumer confusion, RAC is left with, at most, two instances of potential consumer confusion: an email from a marketing professional who appeared to believe that RAC was affiliated with

11

Gimlet and its *Reply All* podcast, and a Twitter post by a user appearing to believe that RAC authored certain Gimlet posts about podcasts. While we agree with RAC that these anecdotes could suggest some actual consumer confusion, they "constitute[] *de minimis* evidence insufficient to raise triable issues" regarding likelihood of confusion. *Nora Beverages*, 269 F.3d at 124. Thus, given the complete absence of any survey evidence showing actual confusion, along with RAC's scant anecdotal evidence, we agree with the district court that this factor is at best neutral.[3]

### 6.    Bad Faith

The sixth *Polaroid* factor concerns "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill." *Lang*, 949 F.2d at 583 (internal quotation marks omitted). RAC does not dispute that Gimlet was not aware of RAC's existence at the time Gimlet selected the name *Reply All* for its podcast, or that Gimlet sought the advice of counsel after searching for and discovering RAC's mark. Moreover, one of Gimlet's founders testified that

---

[3] While the *de minimis* evidence of actual confusion would seem to tip this factor in Gimlet's favor, because evidence of actual confusion is not necessary to prevail under the Lanham Act, we think it is more appropriate to conclude that this factor is neutral and therefore "has no significant bearing on this appeal." *Guthrie*, 826 F.3d at 45.

the hosts of *Reply All* selected the name because "they wanted a name that was somehow related to the internet." J. App'x at 553. All of these facts indicate Gimlet's good faith in adopting its mark, and this factor therefore favors Gimlet. *See Lang*, 949 F.2d at 583 ("Selection of a mark that reflects the product's characteristics, request for a trademark search and reliance on the advice of counsel are factors that support a finding of good faith.").

### 7. Relative Quality of the Parties' Products

On appeal, RAC does not put forward any specific evidence regarding the quality of its product, simply asserting (without any support from the record) that its "product is used by major publications" and that "[b]illionaire investor Mark Cuban appeared on a conversation with [one of RAC's founders]." RAC Br. at 46. Nor did RAC present any evidence regarding the quality of its product before the district court; it merely stated that "both [RAC's] and Gimlet's products are of a high quality." Dist. Ct. Dkt. 91-1 at 30. Because Gimlet likewise offered no evidence regarding the relative quality of the parties' products, we agree with the district court that this factor does not favor either party. *See Star Indus.*, 412 F.3d at 389 (concluding that this factor was neutral where "[e]ach party claim[ed] that its product [was] 'premium'" without any additional evidence).

13

8.      **Consumer Sophistication**

The last *Polaroid* factor, consumer sophistication, requires us to "consider the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Sports Auth.*, 89 F.3d at 965 (internal quotation marks and alteration omitted). "[T]o the extent that a senior user's potential customers, and other entities with which it hopes to maintain its reputation, do not have a sophisticated knowledge of the overall market, the likelihood is higher that similarity of trademarks may lead them to believe that a junior user's activities are affiliated with those of the senior user." *Guthrie*, 826 F.3d at 43.

We agree with the district court's conclusion that the primary sources of RAC's and Gimlet's potential revenue – advertisers and, in RAC's case, website operators that pay to host its publishing tool – are reasonably sophisticated and are therefore unlikely to be confused by Gimlet's mark. But we also agree with RAC that the district court should not have entirely discounted the sophistication of "members of the public who listen to [Gimlet's] [p]odcast or view [RAC's] software online." Sp. App'x at 17. While these members of the public are not the

14

literal "purchasers" of RAC's and Gimlet's products, they are the users of those products that generate advertising revenue and directly impact RAC's goodwill and reputation in the marketplace.[4]

With that said, RAC fails to adduce any evidence regarding the overall sophistication of internet users who come into contact with its product or who listen to Gimlet's podcast. *See Star Indus.*, 412 F.3d at 390 (explaining that "[c]onsumer sophistication may be proved by direct evidence such as expert opinions or surveys"). While it is true that we have presumed that consumers of certain "inexpensive retail products" are unsophisticated, *see, e.g.*, *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 219 (2d Cir. 2003), *abrogated on other grounds by 4 Pillar Dynasty LLC v. N.Y. & Co.*, 933 F.3d 202 (2d Cir. 2019), it does not necessarily follow (as RAC seems to suggest) that media products available to the

---

[4] RAC spends a substantial portion of its brief arguing that the district court "misunderstood the relevant group of consumers for the [parties'] respective products." RAC Br. at 10. While we agree with RAC that the district court should have considered the sophistication of the parties' everyday users – not simply advertisers and sponsors – we do not agree that this alone constituted reversible error, as RAC seems to suggest. *See, e.g.*, *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 118–19 (2d Cir. 2009) (affirming district court's conclusion that there was no overall likelihood of confusion despite questioning certain aspects of the district court's consumer sophistication analysis). Moreover, the district court appropriately considered the perspective of ordinary internet consumers toward the parties' marks under at least the second, third, and fifth *Polaroid* factors, and we have considered these consumers in conducting in our *de novo* review of the the district court's decision.

general public for free attract unsophisticated or undiscerning users, *cf. Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1152 (9th Cir. 2011) (casting doubt on the notion that "[i]nternet users on the whole exercise a low degree of care"). Thus, given the lack of any evidence in the record indicating the sophistication of either party's everyday users, we find this factor to be neutral. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 119 (2d Cir. 2009).

### 9. Overall Likelihood of Confusion

Examining all of the *Polaroid* factors as a whole, we hold that no reasonable jury could conclude that RAC's customers are likely to be confused by Gimlet's use of its "REPLY ALL" mark. Not a single factor favors RAC, and although the *Polaroid* factors are not exclusive, *see, e.g., Guthrie*, 826 F.3d at 37 & n.3, RAC points to no additional factors beyond the *Polaroid* framework that suggest a likelihood of confusion. Particularly in light of the weakness of RAC's mark and the lack of competitive proximity between the parties' products, we affirm the district court's grant of summary judgment in favor of Gimlet.[5]

---

[5] Because we affirm the district court's grant of summary judgment regarding likelihood of confusion, we need not reach Gimlet's alternative argument that its use of its mark is protected under the First Amendment. Moreover, because RAC has not shown a likelihood of confusion – and therefore no trademark infringement – the district court properly denied RAC's cross-motion for summary judgment on the issue of damages.

16

**B.      RAC's New York Common Law Claims**

Because RAC's New York common law claims for trademark infringement are analyzed under the same framework as its Lanham Act claims, *see Tiffany & Co.*, 971 F.3d at 91 n.13, the district court also properly granted summary judgment in favor of Gimlet on RAC's common law claims.[6]

\*      \*      \*

We have considered all of RAC's remaining arguments and find them to be meritless.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



---

[6] At oral argument, counsel for RAC represented that RAC established diversity jurisdiction to bring its state-law claims.  But this appears to be contradicted by RAC's Amended Complaint, which asserts that both RAC and Gimlet are incorporated in Delaware, *see* J. App'x at 34, thereby destroying diversity of citizenship, *see* 28 U.S.C. § 1332(c)(1) (explaining that "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated").  Nonetheless, we conclude that the district court did not abuse its discretion in exercising supplemental jurisdiction over RAC's state-law claims even after dismissing RAC's federal claims, particularly given the court's familiarity with this case and the fact that RAC's state and federal claims are analyzed under an identical framework.  *See, e.g., Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 118 (2d Cir. 2013) ("[W]e have upheld the exercise of supplemental jurisdiction in situations when[,] as here[,] the state law claims are analytically identical to federal claims." (internal quotation marks omitted)).